# Exhibit A

KEVIN J. RUSSELL, ESQ., LLC.
Kevin J. Russell, Esq.
N.J. ID No: 036451990
921 Summit Avenue
Jersey City, New Jersey 07307
(201) 360-3776
kevin@krussellesq.com
Attorneys for Plaintiff

| | |
|---|---|
| VALA, LLC, a Limited Liability Company of New Jersey, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY |
| Plaintiff | DOCKET NO: |
| vs. | CIVIL ACTION |
| METRO PCS NEW YORK, LLC a/k/a METROPCS a/k/a METRO n/k/a METRO BY T-MOBILE; T-MOBILE US, INC. a/k/a METRO BY T-MOBILE, AS SUCCESSOR IN INTEREST TO METROPCS a/k/a METRO, JOINTLY and SEVERALLY, and JOHN DOES 1 THROUGH 10, SAID NAMES BEING FICTITIOUS, BEING INDIVIDUALS AND BUSINESS ENTITIES WHOSE IDENTITIES ARE NOT PRESENTLY KNOWN, WHO ARE SUBSIDIARIES, SUCCESSORS IN INTEREST, RELATED TO OR AFFILIATED WITH DEFENDANTS METROPCS, METRO BY T-MOBILE AND T-MOBILE, JOINTLY and SEVERALLY, | COMPLAINT |
| Defendants | |

1

Plaintiff, VALA, LLC, by and through its attorneys, Kevin J. Russell, Esq., LLC, by way of Complaint against defendant METRO PCS NEW YORK, LLC, a Delaware limited liability company a/k/a MetroPCS a/k/a Metro n/k/a Metro by T-Mobile, and defendant T-MOBILE US, INC. a/k/a Metro by T-Mobile, as successor in interest to MetroPCS a/k/a Metro, and defendants JOHN DOES 1 through 10, said names being fictitious, who are individuals and business entities whose identities are not presently known, and who are subsidiaries, successors in interest, related to or affiliated with defendants MetroPCS, Metro by T-Mobile and T-Mobile, and are liable to plaintiff on the claims set forth herein, jointly and severally, says:

## PARTIES

1. Plaintiff Vala, LLC, is a limited liability company of the State of New Jersey ("Plaintiff" or "Vala") having an office and place of business at 195 New York Avenue, Jersey City, New Jersey 07307.

2. On information and belief, defendant MetroPCS New York, LLC is or was (at all times relevant herein) a limited liability company of the State of Delaware a/k/a MetroPCS a/k/a Metro and n/k/a Metro by T-Mobile ("defendant Metro" or "MetroPCS" or "Metro"); and at all times relevant herein, defendant Metro was doing business in the State of New Jersey, and it continues to do business in the State of New Jersey.

3. On information and belief, defendant T-Mobile US, Inc. (f/k/a T-Mobile USA, Inc.) a/k/a Metro by T-Mobile is the successor in interest to defendant MetroPCS by merger ("defendant T-Mobile" or "Metro by T-Mobile"); and at all times relevant herein,

2

defendant T-Mobile was doing business in the State of New Jersey, and it continues to do business in the State of New Jersey.

4. On information and belief, on or about May 1, 2013 MetroPCS and T-Mobile USA, Inc. completed a merger by which defendant T-Mobile US, Inc. became the successor in interest to defendant MetroPCS, and as its successor in interest, defendant T-Mobile does business, in part, as "Metro by T-Mobile." At all times relevant herein, defendants T-Mobile and Metro by T-Mobile were doing business in the State of New Jersey, and it continues to do business in the State of New Jersey.

5. Defendants John Does 1 through 10, said names being fictitious, are individuals and business entities whose identities are not presently known, who are subsidiaries, successors in interest, related to or affiliated with defendants MetroPCS, Metro by T-Mobile and T-Mobile, and are liable to plaintiff under the Lease Agreement and the Common Law on the claims set forth in this Complaint. [Defendant MetroPCS and defendant Metro by T-Mobile and defendants John Does 1 through 10 are collectively referred to as "defendants" in this Complaint.]

## ALLEGATIONS COMMON TO ALL COUNTS

### A. The Lease Agreement.

6. Plaintiff is the owner in fee of all right, title and interest in and to the land, building and improvements with appurtenances commonly known as 195 New York Avenue, Jersey City, New Jersey 07307 (the "Property" or "Real Property").

3

7. On or about March 28, 2008 plaintiff and defendant Metro entered into a certain Communications Site Lease Agreement ("Lease Agreement" or "lease") wherein and whereby plaintiff agreed to lease a part of the Property, including part of the roof, to defendant Metro ("Premises" or "demised premises" or "Site"), and Metro agreed to accept the Premises to construct and operate a wireless communications site at the Premises and Property on the terms and conditions and for the payment of rent set forth in the Lease Agreement.

8. The Lease Agreement defined defendant Metro's permitted use and occupancy and activities at the Premises, in pertinent part, as follows;

> The Premises may be used by Lessee for the operation of a wireless communications site. Lessee may install, place, use and operate on Premises such antennas, radio transmitting nd receiving equipment, conduits, wiresm batteries, back-up generators, utility lines and facilities, supporting structures, storage facilties, telephone facilities, mirorwave equipment, and related equipment (collectively "Lessee's Facilities") as Lessee deems necessary for the operation of its wireless communications site at the Premises. ... Lessee may perform construction, maintenance, repairs, additions to, and replacement of Lessee's Facilities as necessary and appropriate for itrs ongoing business and has the right to do all work necessary to prepar, modify and maintain the Premises to accommodate Lessee's Facilities as required for Lessee's communications operations at the Premises. [The Lessee's Facilities, together with all fixtures and incidental personal property are hereinafter referred to as the "Lessee's Facilities."]

9. The Lease Agreement defined the initial term and the renewal terms, in pertinent part, as follows:

> The term of this Lease Agreement ("Term") shall be five (5) years . . . from the Commencement Date [as defined in the Lease]. . . . Lessee shall have the right to extend the Term of this Lease Agreement for four (4) additional terms (each a "Renewal Term") of five years. The terms and

4

conditions for each Renewal Term shall be the same terms and conditons as in this Lease Agreement, except that the Rent shall be increased as set forth hereinbelow. ...

10. The Lease Agreement required the payment of rent by defendant Metro to plaintiff together wit late fees and interest, if applicable, in pertinent part, as follows:

Lessee shall pay lessor, as rent, the sum of Two Thousand Eight Hundred Dollars ($2,800) ("Rent") per month . . . payable on the first day of each calendar month, in advance . . . . Rent shall be adjusted on each annual anniversary of the Commencement Date by an increase of four percent (4%) of the Rent paid during the previous year. In the event that the National Inflation Rates per annum rise to ten percent (10%) or more per annum, as stated in the Wall Street Journal, renewal of the Rent for this Lease for the following year shall be equal to 75% of he posted National Inflation Rate not 4% as stated above.

Lessee shall pay Lessor a late rental fee in the amount of ten percent (10%) of the Rent for Rent unpaid by the 20th day of each month. Any amount owed by Lessee to Lessor which is not paid when due shall bear interest at the rate of tern percent (10%) per month ("Default Interest") from the date due until such date as Rent is paid in full. If the interest rate specified shall exceed the maximum rate permitted by law, the Default Interest shall be deemed to be the maximum legal interest rate permitted by law.

11. Throughout the term or any renewal term of the Lease Agreement, plaintiff agreed that defendant Metro had a right of access to the Premises twenty-four (24) hours a day, seven (7) days a week, at no additional charge or rent.

12. Throughout the term or any renewal term of the Lease Agreement, defendant Metro agreed that it had the obligation to cooperate with any reasonable security procedures utilized by plaintiff for the Property and the other tenants or occupants in the Property.

13. Throughout the term or any renewal term of the Lease Agreement, defendant Metro agreed that it would not unduly disturb or interfere with the business or other activities of plaintiff or any of the other tenants or occupants of the Property.

14. The Lease Agreement permitted either party to terminate the Lease Agreement before the end of the original term or any renewal term on the current term on ninety (90) days prior written notice to the other party.

15. Upon defendant Metro's termination of the Lease Agreement (for any of the reasons set forth therein), defendant Metro agreed, in pertinent part, as follows:

> Lessee upon termination of this Lease, shall within ninety (90) days, remove its equipment, fixtures and all personal property ("Lessee's Facilities") and restore the Property to its original condition, reasonable wear and tear excepted. If such time for removal causes Lessee to continue to operate its Facilities after termination of this Lease, Lessee shall pay rent at the then existing monthly rate . . . until such time as the removal of Lessee's building, antenna structure, cabling, fixtures and all other personal property (Lessee's Facilities) are completed.

16. Throughout the term and any renewal term of the Lease Agreement, and after the termination of the Lease Agreement, defendant Metro agreed to indemnify plaintiff for all losses, damages, costs and expenses arising from and in connection with defendant Metro's use, operation, maintenance or repair of Lessee's Facilities at the Premises or the Property. The Lease Agreement provides, in pertinent part, as follows:

> Lessee hereby agrees to indemnify and hold Lessor . . . harmless from and against any and all losses, claims, liabilities, damages, costs and expenses (including reasonable attorney's fees and costs) and injiries (including personal injuries or death) arising from or in connection with Lessee's use, operation, maintanance or repair of Lessee's Facilities at the Premises or access over Lessor's Real Property ... except those resulting from the negligence or wilfull misconduct of Lessor ...

6

The indemnity provisions of this section shall survive the expiration, cancellation or expiration of this Lease Agreement.

17. The Lease Agreement further provided, in pertinent part, as follows:

This Lease shall be governed by and construed in accordance with the laws of the State in which the Premises are located.

In the event Lessor (plaintiff) is the prevailing party in any legal claim arising hereunder, it shall be entitled to its reasonable attorneys' fees and court costs. In no other instance shall Lessor or Lessee be entitled to receive reasonable attorneys' fees and costs.

Terms and conditions of this Lease Agreement which by their sense and context survive the termination, cancellation or expiration of this Lease Agreement will so survive.

18. Plaintiff and defendants accepted the Lease Agreement as a valid and binding obligation of each party, enforceable in accordance with its terms, and agreed that the Lease Agreement "shall be binding on an inure to the benefit of the successors and permitted assignees of the respective parties."

## B. The Termination of the Lease Agreement

19. On or about August 12, 2015 defendant Metro sent a letter to plaintiff which advised plaintiff that defendant Metro "or the applicable affiliate of MetroPCS" (defendant Metro by T-Mobile or T-Mobile) was terminating the Lease Agreement effective on November 15, 2015.

20. Within ninety (90) days of the date of the termination of the Lease Agreement, defendants were obligated to remove the Lessee's Facilities and restore the Premises and Property to its original condition, reasonable wear and tear excepted. In

7

doing so, defendants were obligated to vacate and deliver possession of the Premises and Property to plaintiff.

21. Defendants were obligated to pay rent to plaintiff until the removal of the Lessee's Facilities was completed and the Premises and Property restored to its original condition, reasonable wear and tear excepted.

22. Defendants failed to pay rent until all of the Lessee's Facilities were removed and the Premises and Property restored.

23. Plaintiff demanded payment of rent until all of the Lessee's Facilities were removed and the Premises and Property restored, and defendants failed or refused to pay rent.

24. Defendants removed some, but not all of the Lessee's Facilities. Since the date of the termination of the Lease Agreement, some of the Lessee's Facilities have remained on the Premises and Property.

25. Plaintiff demanded that defendants remove the remainder of the Lessee's Facilities and restore the Premises and Property, and defendants have failed to take such action.

### C. **Defendants' Abandonment of Premises and Property**

26. Defendants failed to pay rent for the month of June 2016 when due.

27. Defendants failed to pay rent for the month of July 2016 when due.

28. Defendants failed to pay rent for the month of August 2016 when due.

29. Defendants failed to pay rent for the month of September 2016 when due.

30. Defendants failed to pay rent for the month of October 2016 when due.

31. Defendants failed to pay rent for the month of November 2016 when due.

32. Between August 2015 and November 1, 2016, defendants continued performing certain obligations under the Lease Agreement.

33. On or about November 1, 2016 defendant Metro sent a letter to plaintiff which advised plaintiff that defendant Metro would no longer take any action to remove the remainder of the Lessee's Facilities due to plaintiff's alleged failure to provide access or cooperate, and defendant Metro stated, in part, that the Lessee's Facilities which remained at the Premises and Property shall be the sole responsibility of plaintiff.

34. On or about November 1, 2016 defendants admitted that the "Metro Site NYS038 is officially abandoned." The abandonment included the remainder of Lessee's Facilities.

35. Plaintiff disputed defendants' allegations of lack of access and cooperation. Plaintiff provided access and cooperated with defendants in connection with defendants' post-lease termination activities, and defendants' failed or refused such access or accept such cooperation in fulfilling their post-lease termination activities.

36. Defendants have taken no further action to remove the Lessee's Facilities since November 1, 2016 in breach of the Lease Agreement.

37. Defendants have failed or refused to pay rent since June 1, 2016 to the present date in breach of the Lease Agreement; defendants' failure or refusal to pay rent is expected to continue as this action proceeds.

## FIRST COUNT
## (Breach of Contract)

38. Plaintiff repeats and incorporates by reference herein all of the previous allegations of the Complaint.

39. Defendants have failed or refused to pay rent for the time periods set forth herein, and such failure or refusal constitutes a material breach of the Lease Agreement.

40. Plaintiff has demanded that defendants pay all past due rent, and defendants have failed or refused to pay such rent.

41. Defendants have failed or refused to remove all of the Lessee's Facilities within ninety (90) days of the date of the termination of the Lease Agreement, and thereafter to date, and such failure or refusal constitutes a material breach of the Lease Agreement.

42. Plaintiff has demanded that defendants remove the Lessee's Facilities the Premises and Property, and defendants have failed or refused to remove same.

43. Defendants have failed to restore the Premises and Property to its original condition, reasonable wear and tear excepted, and such failure or refusal constitutes a material breach of the Lease Agreement.

44. Plaintiff has demanded that defendants restore the Premises and Property to its original condition, reasonable wear and tear excepted, and defendants have failed or refused to take such action.

45. As a direct and proximate and consequential result of defendants' breach of the Lease Agreement, plaintiff has been deprived of the full and unrestricted use and

occupy the Premises and Property formerly occupied by defendant MetroPCS, and plaintiff has been deprived of its right of quiet enjoyment of the Premises and Property.

46. As a direct and proximate and consequential result of defendants' defaults and breach of the Lease Agreement, plaintiff has been deprived of its ability to rent the Premises and Property formerly occupied by defendant Metro.

47. As a direct and proximate and consequential result of defendants' defaults and breach of the Lease Agreement, plaintiff suffered damages and continues to suffer damages.

## SECOUND COUNT
### (Trespass to Real Property)

48. Plaintiff repeats and incorporates by reference herein all of the previous allegations of the Complaint.

49. Upon termination of the Lease Agreement, defendants were obligated to remove the Lessee's Facilities and restore the Premises and Property to its original condition, reasonable wear and tear excepted.

50. Defendants' failed or refused to remove the Lessee's Facilities and restore the Premises and the Property within ninety (90) days after the termination of the Lease Agreement, and thereafter to date, and defendants Lessee's Facilities have remained on the Premises and Property without plaintiff's authorization or consent and in violation of the Lease Agreement and the Common Law.

51. The presence of the Lessee's Facilities more than ninety (90) days after termination of the Lease Agreement is not permitted, licensed or privileged.

11

52. Defendants' conduct, actions and failures or refusals to act, aforesaid, constitute trespass, and such trespass has been continuous, persistent and willful and intentional and/or reckless and in wanton disregard of plaintiff's rights and/or negligent.

53. Plaintiff has demanded that defendants cease and desist such trespass, and defendants have failed or refused to take such action.

54. As a direct and proximate and consequential result of defendants' trespass, aforesaid, plaintiff has been deprived of its full use and occupancy of the Premises and Property formerly occupied by defendant MetroPCS.

55. As a direct and proximate and consequential result of defendants' trespass, aforesaid, plaintiff has been deprived of its full ability to rent the Premises and Property formerly occupied by defendant Metro.

56. As a direct and proximate and consequential result of defendants' trespass, aforesaid plaintiff has been denied quiet enjoyment of the said Premises and Property.

57. As a direct and proximate and consequential result of defendants' trespass, aforesaid, plaintiff suffered damages and continues to suffer damages.

### COUNT THREE
### (Unjust Enrichment)

58. Plaintiff repeats and incorporates by reference herein all of the previous allegations of the Complaint.

59. Defendants have been enriched and received a benefit at the expense and to the detriment of plaintiff each and every day that defendants' Lessee's Facilities remain

at the Site and the Property and the Premises and Property are not restored to its original condition, reasonable wear and tear excepted.

60. Plaintiff has been compelled to protect, secure and safeguard the Lessee's Facilities at the Site, and defendants have not paid plaintiff for the storage, use and occupancy of the Lessee's Facilities at the Site.

61. Plaintiff had and has a reasonable expectation of payment and performance of the Lease Agreement by defendants during the term of the Lease Agreement and upon the termination of the Lease Agreement.

62. Plaintiff had and has a reasonable expectation of payment of reasonable value for defendants' storage, use and occupancy of the Lessee's Facilities under the Common Law.

63. Defendants' retention of the value and the benefit from plaintiff, aforesaid, without payment to plaintiff is unfair, unreasonable and unjust.

64. Plaintiff has demanded payment and performance from defendants, and defendants have failed or refused to pay or perform their obligations.

65. As a direct and proximate and consequential result of defendants' unjust enrichment, plaintiff has suffered damages and continues to suffer damages.

## COUNT FOUR
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

66. Plaintiff repeats and incorporates by reference herein all of the previous allegations of the Complaint.

67. The Lease Agreement contains an implied covenant of good faith and fair dealing in the performance and enforcement of the agreement by operation of law.

68. The implied covenant of good faith and fair dealing, in pertinent part, requires that the parties act honestly, in good faith, and deal fairly with each other.

69. The implied covenant of good faith and fair dealing, in pertinent part, requires that the parties observe reasonable commercial standards and refrain from acting in a way that will destroy or injure the right of the other party to receive the benefit of the contract.

70. Defendants' conduct, actions and failures to act, aforesaid, violate the implied covenant of good faith and fair dealing in the Lease Agreement.

71. As a direct and proximate and consequential result of defendants' breach of the covenant of good faith and fair dealing, aforesaid, plaintiff has suffered damages and continues to suffer damages.

**WHEREFORE**, plaintiff Vala demands judgment against defendants, MetroPCS, Metro by T-Mobile, T-Mobile and John Does 1 through 10, jointly and severally, as follows:

A. For compensatory damages;

B. For consequential damages;

C. For unpaid rent, late fees and interest as set forth in the Lease Agreement;

D. For damages, costs and expenses necessary to remove the Lessee's Facilities, fixtures, equipment and property and restore the Premises and Property;

E. For damages for trespass to plaintiff's Property;

14

F. For damages for unjust enrichment;

G. For damages for breach of the implied covenant of good faith and fair dealing;

H. For interest on all damages aforesaid;

I. For reasonable attorneys' fees and costs as set forth in Lease Agreement;

J. For costs as provided by law; and

K. For such other legal and equitable relief as the Court deems reasonable, fair and just.

                                 KEVIN J. RUSSELL, ESQ., LLC
                                 Attorneys for Plaintiff

                                 By: _____
                                      Kevin J. Russell

Dated: October 28, 2022

### **DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Kevin J. Russell, Esq., is hereby designated as trial counsel for plaintiff in this matter.

                                 KEVIN J. RUSSELL, ESQ., LLC
                                 Attorneys for Plaintiff

                                 By: _____
Dated: October 28, 2022                  Kevin J. Russell

## CERTIFICATION PURSUANT TO R. 4:5-1(b) (3)

Pursuant to R. 4:5-1(b)(3) I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

## CERTIFICATION REQUIRED BY RULE 4:5-1(b)(2)

Pursuant to R. 4:5-1(b)(2) I certify, upon information and belief, that the matter in controversy is not the subject of any other action pending in any court or arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I further certify to the best of my knowledge that there are no other parties who should be joined in this action, except for the identification and naming of any John Doe defendant.

KEVIN J. RUSSELL, ESQ., LLC
Attorneys for Plaintiff

By: /s/ Kevin J. Russell
Kevin J. Russell

Dated: October 28, 2022